## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| **John Cummins-Reed, et al.,** | ) | |
|     **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **1:19cv604 (AJT/IDD)** |
| | ) | |
| **Jason Wilson, et al.,** | ) | |
|     **Defendants.** | ) | |

### MEMORANDUM OPINION

John and Harrison Cummins-Reed ("plaintiffs") initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants infringed on rights they claim to possess by virtue of their marriage and failed to protect them from harm at the hands of other residents of the Virginia Center for Behavioral Rehabilitation ("VCBR"). Dkt. No. 9. Defendants Jason Wilson, Anita Schlank, and Sanita Rhodes (collectively "defendants") filed a motion to dismiss the claims against them [Dkt. No. 35] as well as a memorandum in support [Dkt. No. 36]. Plaintiffs oppose the motion. Dkt. No. 37. The parties have additionally filed a variety of other motions which will be resolved prior to adjudicating defendants' motion to dismiss.

### I. Pending Motions Other than the Motion to Dismiss

A.    *Motions for Appointment of Counsel*

Plaintiffs have filed two separate motions for appointment of counsel and have repeated their request in several other filings. See Dkt. Nos. 6, 20. As plaintiffs are aware, the Fourth Circuit has limited appointment of counsel to cases in which "exceptional circumstances" exist, such as cases with particularly complex factual and legal issues, or cases in which a litigant is unable to represent himself adequately. Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). Plaintiffs here have ably filed numerous motions and cited to a variety of legal authorities in

support of their positions.  They have proven themselves capable of self-representation in this

matter and, accordingly, their motions for appointment of counsel shall be denied.

B.       *Motions for Subpoenas and to Enter Documents into the Record*

Plaintiffs next assert that they submitted a host of documents in support of a lawsuit they

initiated in the Virginia state court system which "are vital in proving [their] claims in this 1983

action."  See Dkt. No. 27.  Accordingly, they ask this Court to "subpoena from the Nottoway

County Virginia Circuit Courts … all of the documents [they] submitted as evidence."  Id.

Plaintiffs have additionally moved the Court to "enter documents in support" of their claims.

See Dkt. No. 29.  Appended to this second motion are approximately 130 pages of statements

from individuals housed at VCBR, VCBR privacy practice documents, letters from Virginia state

officials, formal complaint forms, and more.  See id.

At this stage of the litigation, plaintiffs need not submit, and the Court need not consider,

any documents other than those relevant to defendants' motion to dismiss.  In considering a

motion to dismiss, the Court contemplates the sufficiency of the complaint itself, not the body of

evidence plaintiffs may have to support their claims.  See, e.g., Republican Party of N.C. v.

Martin, 980 F.2d 943, 952 (4th Cir. 1992).  Accordingly, plaintiffs' motion for subpoenas and to

introduce documentary evidence into the record shall be denied without prejudice.

C.       *Plaintiffs' "Motion to Suppress"*

Before filing their motion to dismiss, defendants filed an opposition in response to

plaintiffs' many motions for injunctive relief.  See Dkt. No. 17.  In that filing, defendants

provided context regarding several of the policies in place at VCBR and how those policies

applied to plaintiffs with respect to their medical and legal histories.  See id.  Plaintiffs responded

by filing a "motion to suppress," arguing that defendants divulged privileged information and

thereby violated the Health Insurance Portability and Accountability Act ("HIPAA").  Dkt. No.

2

24.  Accordingly, they request that the Court "disregard all disclosures of privileged / confidential nature and not use them to make any decisions."  Id.

In response, defendants submit that motions to suppress are governed by rules of criminal procedure and are not appropriately filed in civil actions.  See Dkt. No. 32.  They further assert that, to the extent this Court construes plaintiffs' motion as a motion to strike, plaintiffs still are not entitled to their requested relief because motions to strike apply to pleadings, see Fed. R. Civ. P. 12(f), which their opposition was not.  Be that as it may, to assuage plaintiffs' concerns regarding the information divulged by defendants, the Court shall construe their motion to suppress as a motion to seal documents and will order defendants' opposition to their motions for injunctive relief be sealed.

## II.  Defendants' Motion to Dismiss

A.    _Background_

The following allegations are assumed true for the purpose of ruling on defendants' motion to dismiss.  See Turner v. Thomas, 930 F.3d 640, 644 (4th Cir. 2019).  Plaintiffs are housed at VCBR having been civilly-committed as sexually violent predators, and who married each other while residing at the facility.  Dkt. No. 9, pp. 9, 14[1]; Dkt. No. 17.  Since plaintiffs' marriage, defendants have not allowed plaintiffs to cohabitate, commingle their funds, or have any significant physical contact with one another.  Id. at p. 9.  Plaintiffs assert that, as a married couple, they are entitled by law to these as well as other privileges.  Dkt. No. 9 at pp. 6-7.  Plaintiffs claim that "all other residents are allowed visitation w/ their spouse 4 times a week (or other loved ones) which consist of physical contact (including hugs, kisses, and holding hands,

---

[1] This Memorandum Opinion will cite to plaintiffs' complaint using the page numbers assigned by ECF instead of those listed by plaintiffs.

as well as sharing food), sharing / combining funds and physical assets such as money and personal property, etc." Id. at p. 9.

In attempts to change the manner in which they are treated, plaintiffs have contacted defendants verbally and through hand-written notes, "Request for Correspondence" forms, "Request for Resident Move" forms, and standard grievances. Id. at p. 8. On numerous occasions, defendants have responded to plaintiffs, frequently denying their requests. Id. As a result, in pursuit of the marital rights to which they believe they are entitled, plaintiffs filed two unsuccessful lawsuits in Nottoway Circuit Court. Id. at p. 7; see also Dkt. No. 36-1.

Once news of plaintiffs' marriage spread through VCBR, plaintiffs were subjected to mistreatment by VCBR staff and residents alike. Id. at p. 10. Specifically, in May 2018, John Cummins-Reed was moved into a room against his will and forced to stay with a roommate who, by June of 2018, repeatedly undressed in front of him, entered the room while plaintiff undressed, and masturbated in front of plaintiff. Id. Defendant Rhodes organized a "mediation" between the individuals, but John Cummins-Reed's roommate refused to participate. Id.

In November of 2018, plaintiff John Cummins-Reed moved into a new room with a new roommate. Id. In December of that year, the new roommate "broke [plaintiff's] $200 T.V. out of spite." Id. Plaintiff John Cummins-Reed reported this to all three defendants, "who did nothing." Id. On the date the amended complaint was filed, John Cummins-Reed still resided with the same individual who routinely stole plaintiff's food, hygiene products, and fan, turned on the light, yelled, and left the door open while plaintiff slept, and expressed to staff and residents at VCBR that he does not like plaintiffs. Id. Meanwhile, to avoid living with a roommate who "consistently crossed boundaries," Harrison Cummins-Reed in November 2018 moved into a room with an individual who bullied, harassed, and screamed at him. Id. at p. 11. In February 2019, that roommate assaulted Harrison. Id. Plaintiffs concede that defendants have

4

offered them other room assignments but that, because moving to those rooms would separate them from each other, they have declined to accept such offers.  Id.

Plaintiffs further assert that several VCBR staff members routinely "cuss [them] out," call them "girls," and refuse to address them by their married name, Cummins-Reed.  Id. at p. 12. Plaintiffs state that the VCBR residents are equally or more aggressive and disapproving of their marriage.  Id.

B.    *Standard of Review*

Defendants bring motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction.  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint; it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses.  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).  To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if "the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Nemer Chevrolet, Ltd. v. Consumeraffairs.com Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678).  A plaintiff must therefore allege facts in support of each element of each claim he raises.

In considering a 12(b)(6) motion, a district court ordinarily may not consider any documents outside of the complaint or those not expressly incorporated therein without converting the motion into one for summary judgment.  There are, however, exceptions to this rule.  Specifically, a court "may consider official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the

authenticity of these documents is not disputed," without converting the motion into a motion for summary judgment.  See, e.g., Stoney Glen, LLC v. S. Bank & Tr. Co., 944 F. Supp. 2d 460, 464 (E.D. Va. 2013); see also Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396-97 (4th Cir. 2006).

C.   *Analysis*

### 1.   Res Judicata

Defendants argue in part that the Court lacks jurisdiction over this matter because plaintiffs' claims are barred by res judicata by virtue of the fact that plaintiffs already unsuccessfully pursued those claims in state court.  Plaintiffs concede that they did unsuccessfully initiate suits in state court but argue that their claims should not be barred here because, in state court, they pursued only their marital rights claim, not a failure to protect claim.

In considering the preclusive effect of a state court's dismissal of a case with prejudice, federal courts apply applicable state law rules.  See Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985) ("It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments.") (quoting Kremer v. Chem. Constr. Corp., 456 U.S. 461, 481-82 (1982)).  Accordingly, this Court applies Virginia state law in considering defendants' res judicata defense.

The res judicata effect of a Virginia state court dismissal is set forth in Rule 1:6 of the Rules of the Supreme Court of Virginia.  Entitled "Res Judicata Claim Preclusion," Virginia Supreme Court Rule 1:6 states:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction, or occurrence, whether or not the legal theory or rights asserted in the second and subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claim in the prior proceeding

depended, or the particular remedies sought.  A claim for relief pursuant to this rule includes those set forth in a complaint, counterclaim, cross-claim for third-party pleading.

Va. Sup. Ct. R. 1:6(a); see also Va. Code § 8.01-581.11 (authorizing the Supreme Court of Virginia to promulgate rules of practice).

Under Virginia law, then, a valid res judicata defense claim has three elements: (1) a final judgment issued on the merits of a prior suit; (2) identical parties or parties in privity between the prior and present suits; and (3) that the claim brought in each proceeding arose out of the same conduct, transaction, or occurrence.  See Lee v. Spoden, 776 S.E.2d 798, 804-06 (Va. 2015).

### i.  *Final Judgment on the Merits*

The first issue to consider is whether the Nottoway County Circuit Court's dismissal of plaintiffs' lawsuit constituted a "final judgment" on the merits of plaintiffs' claims.  This Court concludes that it did.  Under Virginia law, as a general rule, a dismissal of a defendant or claim "with prejudice" constitutes "an adjudication on the merits and final disposition barring the right to bring or maintain an action on the same claim or cause."  Reed v. Liverman, 458 S.E.2d 446, 447 (Va. 1995).  Furthermore, a dismissal with prejudice generally "is as conclusive of the rights of the parties as if the suit had been prosecuted to a final disposition adverse to the plaintiff."  Id. Here, where the state court unequivocally ruled that plaintiffs' claims were denied with prejudice and without a right to amend, see Dkt. No. 36-1, the state court's judgment was final.

### ii.  *Identity of Parties*

The term "party or parties" as used in Rule 1:6(a) "include[s] all named parties and those in privity."  Rule 1:6(d).  It is uncontested that Jason Wilson was a party to the state court actions and is a party here.  See Dkt. No. 9; Dkt. No. 36-1.  Defendants Schlank and Rhodes, on the

other hand, were not named in the state court suits.  See Dkt. No. 36-1.  This Court must therefore determine whether these newly added parties are in privity with Wilson.

Complicating this question is plaintiffs' failure to specify in their state court suit whether they sought relief from Wilson in his personal or official capacity.  See Brooks v. Arthur, 626 F.3d 194, 201 (4th Cir. 2010) ("The rule of differing capacities is generally understood to mean that defendants in their official and individual capacities are not in privity with one another for the purposes of res judicata.").  The named defendants in this suit are all employees of VCBR and are therefore in privity in their official capacities.  See id. at 200 (finding privity between government entity and individual employees sued in their official capacities).

To the extent, though, that plaintiffs' state court suit sought relief from Wilson in his personal capacity, no privity exists between the parties.  The touchstone of privity for purposes of res judicata is that a party's interest is so identical with another that representation by one party is representation of the other's legal right.  Nero v. Ferris, 222 Va. 807, 813 (1981). "Virginia courts typically find privity when the parties share a contractual relationship, owe some kind of legal duty to each other, or have another legal relationship such as co-ownership." Columbia Gas Transmission, LLC v. David N. Martin Revocable Trust, 833 F. Supp. 2d 552, 558 (E.D. Va. 2011).  No such relationship between parties has been asserted here. Consequently, the Court cannot at this juncture determine that privity exists between the parties with respect to claims raised against them in their individual capacities.

   iii.  *Same Conduct, Transaction, or Occurrence*

Finally, this Court must determine the scope of the preclusive effect of the state court judgment by considering the facts on which it and the instant action are predicated.  "The proper approach asks whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties'

expectations or business understanding or usage." Funny Guy, LLC v. Lecego, LLC, 795 S.E.2d

887, 897 (Va. 2017) (internal quotation marks and citation omitted).

It is clear that the instant action is predicated on the same conduct as that on which the

state court suit was based.  Specifically, in both cases, plaintiffs allege that, in the aftermath of

their legal union, VCBR officials failed to recognize or respect the rights allegedly owed to them

by virtue of their marriage.  Both suits also allege plaintiffs' mistreatment and abuse at the hands

of VCBR residents.  Plaintiffs' argument that their state court lawsuits were based only on their

marital rights claims are therefore incorrect.  And despite the later date of plaintiffs' amended

complaint, plaintiffs do not allege any facts that post-date the filing of their state court suits in

March 2019.  Accordingly, the third prong of the res judicata analysis falls in favor of

defendants, and any claim plaintiffs brought or could have brought on the facts alleged in state

court are therefore barred—at least to the extent the parties in each action are in privity with each

other, as discussed above.  See Bates v. Devers, 214 Va. 667, 670 (1974).

****

Based on the above, it seems that, to the extent plaintiffs previously brought claims

against Wilson in his official capacity, such new claims are barred against each defendant.

Because there does not seem to be privity between the parties in their individual capacities,

however, and because in their amended complaint plaintiffs so rarely attribute specific actions to

any individual defendant but instead repeatedly refer to defendants collectively, the Court will

proceed, in an abundance of caution, to assess the allegations to determine whether plaintiffs

have stated a claim upon which relief may be granted.  In light of the analysis laid out above,

defendants' Rule 12(b)(1) motion to dismiss shall be granted in part and denied in part.

### 2.     Failure to State a Claim

#### i.     *Failure to Protect*

Plaintiffs allege that defendants have failed to take measures to protect them from harm they face at the hands of other VCBR residents.  See Dkt. No. 9.  Plaintiffs are involuntarily committed individuals but are not prisoners, and their claims are therefore analyzed under the Fourteenth Amendment.  Bell v. Wolfish, 441 U.S. 520, 537 n.16 (1979); see also Kingsley v. Hendrickson, 135 S. Ct. 2466, 2475 (2015) (noting that the "[t]he language of the [Eighth Amendment and Fourteenth Amendment] differs, and the nature of the claims often differs"). "To succeed on [a] claim of failure to protect [under the Fourteenth Amendment], [a plaintiff] must show that [the defendants] had knowledge of a substantial or pervasive risk of serious harm and acted with deliberate indifference to [the plaintiff's] safety by failing to correct the situation." Skeen v. Orr, 1996 WL 460761, at *2 (4th Cir. Aug. 15, 1996).  An official is deliberately indifferent when he or she "has actual knowledge of a substantial risk of harm … and disregards that substantial risk."  Wilson v. Seiter, 501 U.S. 294, 302-03 (1991).  The question in a failure to protect claim, then, is not whether defendants successfully prevented any and all harm to befall plaintiffs; the question is whether defendants were aware of a risk of harm and failed to act in the face of that knowledge.

Plaintiffs have not satisfactorily alleged facts in support of either element of this claim. Where plaintiffs allege that defendants had knowledge of the conditions plaintiffs allegedly faced, their allegations are vague and unsupported by specific facts such as the time, place, and manner in which plaintiffs reported their concerns.  Plaintiffs also fail to allege which specific defendants they informed at any given time.  Plaintiffs allege, for example, that they "reported specifically and directly to the defendants," see Dkt. No. 7, p. 10, and that "this has been reported," see id. at p. 11.  Such allegations, unsupported by factual details, amount to conclusory assertions that defendants were aware of the risks plaintiffs faced and thus are the type of "threadbare recitals of the elements of a cause of action" insufficient to support a claim.

See Iqbal, 556 U.S. at 678; see also Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985) (finding in the context of a summary judgment analysis that plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places … It's all around us" was conclusory and insufficient to prevent judgment against plaintiff)).

Nor was the potential harm about which plaintiffs contend defendants were aware serious enough to satisfy the above-described standard.  Indeed, there is no allegation that defendants had any knowledge that plaintiffs faced a "pervasive risk of serious harm."  Instead, at best, the allegations support an inference that defendants were aware of interpersonal conflicts between plaintiffs and their roommates.  See id. at p. 11 ("Harrison Cummins-Reed was made to live w/ a roommate who consistently crossed boundaries . . . . i.e. going through Harrison's dirty laundry & clean laundry.").  The allegations also seem to suggest that, to the extent defendants were aware of any potential physical harm befalling plaintiffs, that knowledge arose after plaintiffs had already conflicted with other residents, rendering preventive action on the part of defendants impossible.  See Dkt. No. 9, p. 12 (allegations that plaintiffs were threatened, pushed into walls, had chairs removed from under them, and more, after which "all of this was reported").

Additionally, plaintiffs' allegations make clear that, in certain circumstances, defendants took active measures to mitigate the potential for harm from negative interpersonal relationships between plaintiffs and other VCBR residents.  Plaintiffs state that defendant Rhodes organized a mediation between John Cummins-Reed and his apparently abusive roommate.  See id. at p. 10. Plaintiffs further state that defendants offered them alternative living arrangements when conflicts arose in their living quarters.  See id.  That plaintiffs did not avail themselves of these opportunities does not mean that defendants were indifferent to plaintiffs' circumstances.

Accordingly, in their amended complaint, plaintiffs' allegations do not satisfactorily establish that defendants were aware of risks that plaintiffs were in danger or that the defendants

acted indifferently in the face of that knowledge.  Plaintiffs have thus failed to state a claim

under a failure to protect theory, and defendants' motion to dismiss accordingly shall be granted

as to this claim.

ii.     <u>*Marital Rights / Due Process*</u>

Plaintiffs next assert that, as a married couple, they have a panoply of rights that

defendants have stripped them of.  Specifically, plaintiffs suggest that they are endowed with

rights to "society, consortium, affection, shared financial responsibility, a help mate, privacy,

protection, etc. . . ."  Dkt. No. 9, p. 6.  It appears, then, that plaintiffs seek to argue that they have

substantive or procedural due process rights which they have been improperly denied.  Plaintiffs

do not specify under which theory they seek to proceed.  In deference to their <u>pro</u> <u>se</u> status, the

Court shall consider both.  As explained below, although plaintiffs cite to a host of authorities in

support of their position, none provide a legal foundation for plaintiffs' claims.

a.     Substantive Due Process

In their opposition to defendants' motion to dismiss, plaintiffs cite at least twenty-seven

cases—federal and state—that they argue demonstrate the existence of the rights they claim to

have been denied.  Plaintiffs, however, merely recite block quotations from these cases and do

not elaborate on the context in which they arose.  A brief review of the cases cited reveals that

the presented quotations in large part constitute non-binding dicta and come from dissenting

opinions, decisions from the nineteenth century, or from cases with subject matter entirely

distinguishable from this case.  In some cases, more than one of these descriptions apply to a

cited authority.  Even where plaintiffs cite to arguably relevant law, they do not attempt to

reconcile the holdings of the cases they cite with the fact that they have been involuntarily

12

committed and do not possess all of the same freedoms and interests as the plaintiffs in the cases on which they rely.

Indeed, the first case plaintiffs quote, see Dkt. No. 37, p. 14, demonstrates the untenable nature of their position: "Without doubt, [liberty] denotes not merely freedom from bodily restraint but also the right of the individual to contract, … to marry, … and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness *by free men*." Meyer v. Nebraska, 262 U.S. 390, 399 (1923) (emphasis added).  Put simply, plaintiffs, by virtue of their civil commitment, *are not* free; although they retain many rights[2], most are circumscribed or limited by virtue of their legal status.  And some of the rights plaintiffs claim to possess do not appear to exist at all.

Plaintiffs encourage the Court to consider Youngberg v. Romeo, 457 U.S. 203 (1982), which they argue "does a great job at explaining some of the protected rights of the involuntarily committed.  See Dkt. No. 9, p. 9.  Plaintiffs are correct that the Supreme Court in Youngberg affirmed the proposition that civilly committed individuals "enjoy[] constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests."  Youngberg, 457 U.S. at 324.  But, as is implied through its use of the word "reasonable," and as the Court explicitly states, "these interests are not absolute" and must be balanced "against the relevant state interests."  Youngberg, 457 U.S. at 319-321.  With respect to the question of what constitutes an appropriate amount or type of training, the Youngberg Court held that, when such a

---

[2] Defendants concede, for example, that plaintiffs retain their right to marry while civilly committed.  See Dkt. No. 36, p. 12; see also Turner v. Safley, 482 U.S. 78, 94 (1987) (recognizing a detainee's right to marry).  But plaintiffs do not dispute that they have realized this right; they allege to have been married while residing at VCBR.  See Dkt. No. 9.  To the extent plaintiffs argue they have been denied this right, their own filings demonstrate that they are incorrect.  See Dkt. Nos. 1, 9, 37.

determination is made by a professional, that determination is "presumptively valid" and that "liability may be imposed only when the decision … is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment."  Id. at 323.

Plaintiffs here do not claim to have been physically restrained and, for the reasons stated in the previous section, have failed to state a claim that defendants did not do enough to ensure their safety.  Construing plaintiff's filings liberally, one could read them to contain arguments that, in being denied physical contact with one another, plaintiffs derive less value from the therapeutic treatment or training they are meant to be afforded at VCBR.  But this is exactly the sort of claim the Supreme Court has discouraged district courts from considering; where plaintiffs do not allege that the decision to keep them separated represents a "substantial departure" from professional judgment or norms, they have failed to state a claim under this theory.  In this light, plaintiffs have failed to successfully allege that they have been denied any of the rights afforded them by Youngberg.

Most of the other cases plaintiffs cite are far less relevant than Youngberg and do not provide plaintiffs with the rights they claim to possess.  For instance, that, contrary to plaintiff's arguments, there is no recognized right to live with one's spouse; indeed, in Kerry v. Din, 135 S. Ct. 2128 (2015), a plurality of the justices on the Supreme Court found as much and thus recognized "no constitutional right that could give rise to the substantive due process protections" plaintiffs seek to enforce.  See Bakran v. Johnson, 192 F. Supp. 3d 585, (E.D. Pa. June 28, 2016) (citing Kerry) vacated in part on other grounds by Bakran v. Sec'y, U.S. Dep't of Homeland Security, 894 F.3d 557 (3d. Cir. 2018).  To the extent that this right exists at all, there is no reason to believe that it would not be limited in the civil commitment context, where

individuals must leave their homes to reside at state facilities and are thus naturally separated from their spouses or other loved ones.

The Court equally cannot identify any authority that recognizes a federal right to consortium or marital privacy in the civil commitment context.  See, e.g., Shaw v. Stroud, 13 F.3d 791, 805 (4th Cir. 1994) ("[T]he United States Supreme Court has never held that the protections of substantive due process extend to claims based on governmental action which affects the family relationship only incidentally."); cf. Turay v. Riveland, 85 F.3d 638 (9th Cir. 1996) (finding that the state's restriction on conjugal visits did not offend due process or equal protection and finding that the policies were "rationally related to the legitimate objectives of security and treatment of civilly committed sex offenders"); Young v. Thompson, 992 F.2d 1221 (9th Cir. 1993) (same).

In sum, plaintiffs have not provided, and the Court cannot identify, any legal authority in support of the notion that married individuals who have been civilly committed have an unlimited right to cohabitate, commingle funds, or exercise the privileges plaintiffs desire. Where civilly committed individuals do retain substantive due process rights, they are limited and permissibly balanced against the interests of the state.  See Youngberg at 319-21.  Here, plaintiffs have not convincingly demonstrated that they have substantive due process rights in the capacities they claim.

b.    Procedural Due Process

It is also conceivable that plaintiffs sought to allege that they have been denied *procedural* due process through defendants' actions in keeping them physically separated.  "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015).  "A liberty interest may arise from the

15

Constitution itself, by reason of guarantees implicit in the word 'liberty' see, e.g., Vitek v. Jones, 445 U.S. 480, 493–494 (1980), or, in some instances, through state action, see Sandin v. Connor, 515 U.S. 472, 484 (1995).

Although plaintiffs have failed to identify constitutional bases for the rights they seek, they also point to sources of state law in support of their position.  To the extent they argue that state statutes or rules can create liberty interests protected by the due process clause, plaintiffs are correct.  See Prieto, 780 F.3d 245.  In this case, however, the state laws to which they cite do not create a liberty interest.  Plaintiffs repeatedly submit that several provisions of the Virginia Administrative Code ("VAC") afford them rights.  Each provision plaintiffs cite falls under Title 12, Agency 35, Chapter 115, a portion of the VAC entitled "Regulations to Assure the Rights of Individuals Receiving Services from Providers Licensed, Funded, or Operated by the Department of Behavioral Health and Developmental Services."  See Dkt. No. 9.   But the section of this chapter that delineates its applicability explicitly states that Chapter 115 does not apply to sexually violent predators "to the extent that the [Commissioner of the Department of Behavioral Health and Developmental Services] may determine."  12 VAC 35-115-10.  Where the commissioner does determine the code does not apply, the provision states that he shall create an "exemption … in writing."  Id.

Defendants have submitted proof that VCBR has received such an exemption, see Dkt. No. 17-5,[3] thereby demonstrating that the protections described by the VAC and invoked by plaintiffs do not apply and, thus, do not vest plaintiffs with an enforceable liberty interest.

---

[3] It is not inappropriate to consider this document at the motion to dismiss stage because the document is "central to [plaintiffs'] claims" and its authenticity is not in question.  See Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396-97 (4th Cir. 2006).

Accordingly, to the extent plaintiffs argue they have been denied procedural due process, they are incorrect, and defendants' motion to dismiss will be granted as to that claim.

iii.     _Equal Protection_

Although plaintiffs did not specify that they intended to pursue an equal protection claim in their amended complaint, they stated as much in their opposition to defendants' motion to dismiss, see Dkt. No. 37, p. 9, and the amended complaint contains facts which could, in theory, invoke such a claim.  The Equal Protection Clause of the Fourteenth Amendment protects against arbitrary classifications by state actors and ensures that all similarly situated individuals will be treated in the same way.  U.S. Const. amend. XIV.  To succeed on an equal protection claim, a plaintiff must show that (1) he was treated differently from others (2) who were similarly situated and (3) that this unequal treatment was the result of intentional or purposeful discrimination.  See Plyer v. Doe, 457 U.S. 202 (1982); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Plaintiffs allege here that "all other residents of VCBR are allowed visitation w/ their spouse 4 times a week (or other loved ones) which consist of physical contact … sharing / combining funds and physical assets such as money and personal property" while they "were allowed one hug, one kiss, and one hand hold at [their] marriage ceremony which occurred at VCBR … and that has not been allowed since."  Dkt. No. 9, p. 9.  Plaintiffs have thus alleged facts that support the first—but only the first—prong of the test described above.  Their allegations suggest that the individuals to whom they compare themselves are not "similarly situated" in that those individuals' spouses come to visit them from the outside world, not from within VCBR.  Additionally, plaintiffs suggest that this constitutes a "double standard," but do not suggest that this difference in treatment is the result of intentional or purposeful

17

discrimination.  Consequently, they have failed to allege facts that support an equal protection

claim, and defendants' motion to dismiss shall be granted as to this claim.[4]

### III. Conclusion

For the foregoing reasons, defendants' motion to dismiss for failure to state a claim will

be granted, and their motion to dismiss for lack of jurisdiction will be granted in part and denied

in part.  An appropriate order shall issue.

_____
Anthony J. Trenga
United States District Judge

Entered this 27th day of April 2020.
Alexandria, Virginia

---

[4] Because the Court finds that plaintiffs have failed to establish that defendants infringed their
rights, defendants are entitled to qualified immunity as an additional or alternative ground for
dismissal of plaintiffs' claims against them.  See Dkt. No. 36.

18